WILLIAM E. KIRKLAND, Respondent, v. WILLIAM B. DINSMORE, President, etc., Appellant.

Where a shipper, upon delivery of property to an express company for transportation, receives, without dissent, a receipt, with the understanding that it contains a contract on the part of the company as to the carriage, in the absence of fraud or imposition, the company has a right to infer an assent on his part to conditions in the receipt, not unusual or unreasonable, limiting its common-law liability as carrier; and he is precluded from denying it thereafter to the company's injury.

After a loss, therefore, it is too late for the shipper to object that he omitted to read the receipt, and was ignorant that it contained such conditions.

*Blossom* v. *Dodd* (43 N. Y., 264) distinguished; *Kirkland* v. *Dinsmore* (2 Hun, 46; 4 T. & C., 304) reversed.

(Argued April 29, 1875; decided May 25, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial without a jury. (Reported below, 2 Hun, 46; 4 T. & C., 304.)

This action was brought against defendant as president of the Adams Express Company, a joint stock company, to recover for the loss of a package of money alleged to have been intrusted to said company, as a common carrier, to carry from Wilmington, N. C., to Hudson, N. Y.

At the time of the receipt of the package, the company delivered to plaintiff a receipt therefor, which was retained by him, and which, after describing the package and its address, stated it was received "upon the special acceptance and agreement" (among other things) that the company was not to be held liable for any loss "occasioned by the dangers of railroad transportation or ocean or river navigation, or by fire or steam;" also that the company would not be liable for any loss unless the claim therefor was made in writing, at the office in Wilmington, within thirty days from the date of the receipt. The package was placed by the company's agent in a safe with other money packages, on board the

steamer " General Lyon," to be conveyed from Wilmington to New York. The steamer, while on the voyage, accidentally caught fire, and with her cargo, including the package, was destroyed. It was admitted that this was without negligence on the part of the company.

The court found among other things the following :

" That the plaintiff did not read the receipt when it was delivered to him, nor was his attention called to its conditions or exceptions at that time by the agent of the company, or in any other manner, or by any other person ; that he did not become acquainted with its contents until the following fall or winter ; that he thought it to be an ordinary receipt for money, and not a contract ; that when the receipt was handed to him, he looked at it to see if the amount was correct ; that when he took the receipt plaintiff supposed that it was to show that the company received the money, and that the money was to be sent, and that he could present the receipt and get the money again ; that he looked at the receipt to see where the money was to be carried and to whom it was to be delivered ; that he saw that it was signed by the company's agent, and looked at the date also, but that no knowledge of the limitations, exceptions and conditions printed at the bottom of the receipt, was at the time brought home to the plaintiff, nor did he ever in any way assent to such limitations, exceptions and conditions.

" That when the plaintiff looked at the signature, ' Robinson,' at the bottom of the paper, he saw the printed matter contained in the paper. The language of the witness (plaintiff) was, ' I must have seen it.'

" That plaintiff had sent other packages by this company before, and had taken its receipts for the same, in general appearances similar to this, but had never read them.

" That the claim for said loss was not made in writing or otherwise, at the office of the company or otherwise, within thirty days from the date of the aforesaid instrument or receipt."

And as a conclusion of law, " that the special clauses

of the receipt exempting the company from liability, except as therein stated, were not brought home to the knowledge of the plaintiff, or assented to by him, and cannot be deemed to be agreed upon by the parties," and that the receipt did not under the circumstances constitute an express contract between the parties.

*Chas. M. Da Costa* for the appellant. The receipt issued by defendant's agent and accepted by plaintiff, without objection, was evidence of the contract and was valid as an agreement limiting defendant's common-law liability. (*Wolfe* v. *Myers*, 3 Sandf., 7; *Newstadt* v. *Adam*, 5 Duer, 43; *Moriarty* v. *Harnden's Ex. Co.*, 1 Daly, 227; *Dorr* v. *N. J. S. N. Co.*, 1 Kern., 485; *French* v. *B., N. Y. and E. R. R. Co.*, 4 Keyes, 108; *N. Y. Mfg. Co.* v. *Ill. C. R. R. Co.*, 3 Wall., 107; *Kalman* v. *U. S. Ex. Co.*, 3 Kan., 205; *Grace* v. *Adams Ex. Co.*, 100 Mass., 505; *Maghee* v. *C. and A. R. R. Co.*, 45 N. Y., 514, 518; *Lawrence* v. *N. Y., P. and B. R. Co.*, 36 Conn., 63; *Guillaume* v. *H. and Am. P. Co.*, 42 N. Y., 212; *Steinweg* v. *Erie R. Co.*, 43 id., 123; *Pendergast* v. *Adams Ex. Co.*, 101 Mass., 120; *Lamb* v. *C. and A. R. R. Co.*, 46 N. Y., 271; *Cochran* v. *Dinsmore*, 49 id., 249; *Westcott* v. *Fargo*, 6 Lans., 319; *Farnham* v. *C. and A. R. R. Co.*, 55 Penn., 53; *Reed* v. *U. S. Ex. Co.*, 48 N. Y., 462; *Long* v. *N. Y. C. R. R. Co.*, 50 id., 76; *Belger* v. *Dinsmore*, 51 id., 166; *Wetzell* v. *Dinsmore*, 54 id., 496; *Callender* v. *Dinsmore*, 55 id., 200; *Magnin* v. *Dinsmore*, 56 id., 168; *Steers* v. *L., N. Y. and P. S. S. Co.*, Com. App., 11 Alb. L. J.; *Gleadell* v. *Thompson*, 56 N. Y., 194; *Hinckley* v. *N. Y. C. R. R. Co.*, id., 429; *Hoadley* v. *N. Tr. Co.*, 115 Mass., 304, 306.) The fact that plaintiff did not read the receipt when delivered or afterward become acquainted with its contents, would not invalidate the agreement. (*Grace* v. *Adams Ex. Co.*, 100 Mass., 505; *Blossom* v. *Dodd*, 43 N. Y., 264–269; *Belger* v. *Dinsmore*, 51 id., 166, 172, 174; *Bryce* v. *Lor. Ins. Co.*, 55 id., 240; *Rice* v. *Dwight Mfg. Co.*, 2 Cush., 87; *Hopkins* v. *Westcott's Ex.*

*Co.*, 6 Blatch., 64; *Long* v. *N. Y. C. R. R. Co.*, 50 N. Y., 76; *Collender* v. *Dinsmore*, 55 id., 200, 204; *Fibel* v. *Livingston*, 64 Barb., 179; *Steers* v. *L., N. Y. and P. S. S. Co.*, 11 Alb. L. J., 160; *Hinckley* v. *N. Y. C. and H. R. R. R. Co.*, 56 N. Y., 427, 432; *Lewis* v. *G. W. Co.*, 5 H. & N., 867; *Van Toll* v. *S. E. R. R. Co.*, 12 C. B. [N. S.], [104 E. C. L.], 75; *Squire* v. *N. Y. C. R. R. Co.*, 98 Mass., 239; *Perry* v. *Thompson*, id., 249; *Oppenheimer* v. *U. S. Ex. Co.*, 9 Alb. L. J., 187; *Breese* v. *U. S. Tel. Co.*, 48 N. Y., 132, 139; *Young* v. *W. U. Tel. Co.*, 34 N. Y. S. C., 390; *Wolf* v. *W. U. Tel. Co.*, 62 Penn., 83; *McAndrew* v. *Elec. Tel. Co.*, 17 C. B., 32; Am. L. Rev., 615; *Perkins* v. *N. Y. C. R. R. Co.*, 24 N. Y., 215; *Smith* v. *N. Y. C. R. R. Co.*, id., 223; *Bissell* v. *N. Y. C. R. R. Co.*, 25 id., 445; *Warhus* v. *Bowery Svgs. Bk.*, 21 id., 543; *Pindar* v. *Res. F. Ins. Co.*, 47 id., 114; *Monitor M. F. Ins. Co.* v. *Buffum*, 115 Mass., 343.)

*Horace R. Peck* for the respondent. A common carrier cannot discharge itself from responsibility by notice, even though brought home to the knowledge of the party intrusting property to its care. (*Hollister* v. *Nowlen*, 19 Wend., 234; *Dorr* v. *N. J. S. N. Co.*, 1 Kern., 485; *Blossom* v. *Dodd*, 43 N. Y., 264; *N. J. S. N. Co.* v. *Mer. Bk.*, 6 How. [U. S.], 344.) Its responsibility can only be limited by an express contract between the parties. (1 Pars. on Con., 475; *Bissell* v. *N. Y. C. R. R. Co.*, 25 N. Y., 444.) No such express contract is made by the carrier by a notice or statement of conditions in its receipt. (*Hollister* v. *Nowlen*, 19 Wend., 234; *Nevins* v. *B. S. S. S. Co.*, 4 Bosw., 225; *Prentice* v. *Decker*, 49 Barb., 21; *Limburger* v. *Westcott*, id., 283; *Rawson* v. *Penn. R. R. Co.*, 48 N. Y., 212; *Blossom* v. *Dodd*, 43 id., 266; *Sunderland* v. *Westcott*, 40 How., 468; *Westcott* v. *Fargo*, 63 Barb., 349; *De Barre* v. *Livingston*, 48 id., 511, 521.) It will not be presumed that plaintiff was bound to know the contents of the receipt delivered to him and assented to its terms. (*N. J. S. N. Co.* v. *Mer. Bk.*, 6

How. [U. S.], 344; *Limburger* v. *Westcott*, 49 Barb., 283; *Mer. M. Ins. Co.* v. *Chace*, 1 E. D. S., 115; *Perry* v. *Thompson*, 98 Mass., 249; *Hollister* v. *Nowlen*, 19 Wend., 234; *F. and M. Bk.* v. *C. Tr. Co.*, 23 Vt., 186, 205; Redf. on Car., 140, 141; *Bissell* v. *N. Y. C. R. R. Co.*, 25 N. Y., 444; *Hide* v. *Proprs.*, etc., 1 Esp., 36; *Dorr* v. *N. J. S. N. Co.*, 1 Kern., 485; 2 Pars. on Con. [5th ed.], 238; *Hooper* v. *Wells*, 5 Am. L. Reg. [N. S.], 24; *Atwood* v. *Tr. Co.*, 9 Watts, 88; 2 Gr. Ev., 189; *Butler* v. *Heane*, 2 Camp., 415.) Plaintiff's evidence in relation to the circumstances attending the delivery of the receipt, and his understanding of it, was properly received. (*Quimby* v. *Vanderbilt*, 17 N. Y., 306; *Sunderland* v. *Westcott*, 40 How., 468; *Nevins* v. *B. S. S. S. Co.*, 4 Bosw., 225; Starkie on Ev., 1018; Gr. on Ev. [Redf. ed.], § 284; *King* v. *Woodbridge*, 34 Vt., 571; Redf. on Car., 126, 128, § 153; *Mich. C. R. R. Co.* v. *Hall*, 6 Mich., 243.)

ANDREWS, J.  It is the settled doctrine in this State that the common-law liability of a common carrier is not limited by a general notice that he will not accept or carry goods except under a restricted responsibility, although the notice is known to the shipper of goods when he delivers them for shipment.  The law imposes upon him the duty to carry goods if required, and affixes a responsibility for the safety of the goods which he cannot refuse to accept.  It is the right of the shipper to have the goods carried under this general rule of responsibility, and it is held that an intention to waive this right cannot be inferred simply from a delivery, with knowledge of the carrier's notice, there being no other evidence of assent to have them taken under a modified or restricted liability.  It is presumed under such circumstances that the shipper delivers the goods under the contract which the law creates, and not upon the terms stated in the notice. (*Hollister* v. *Nowlen*, 19 Wend., 234; *Dorr* v. *New Jersey St. Nav. Co.*, 11 N. Y., 485.)  But the law does not forbid contracts between carriers and shippers fixing the terms upon

which goods shall be carried, and when there is a special contract it takes the place of the contract which the law in the absence of a special agreement implies, and so far as it speaks is to be resorted to to ascertain the rights and liabilities of the parties.

It has been repeatedly adjudged in this State that the acceptance by the shipper, on the delivery of goods for transportation to a carrier, of a receipt or bill of lading signed by the carrier expressing the terms and conditions upon which they are received, and are to be carried, constitutes, in the absence of fraud or imposition, a contract controlling the rights of the parties. (*Collender* v. *Dinsmore*, 55 N. Y., 200; *Magnin* v. *Dinsmore*, 56 id., 168; *Hinckley* v. *N. Y. C. and H. R. R. R. Co.*, id., 429.) The plaintiff, when he delivered the money package to the defendant's agent at Wilmington, took from him a receipt stating the amount of money contained therein, the name and residence of the person to whom it was to be sent, and that it was received upon certain special terms and conditions which were printed in the body of the receipt, among which is a provision that the company was not to be liable for loss or damage to the property, occasioned by "the dangers of ocean navigation, or by fire." The receipt was prepared by using a printed form of the company, and when completed by filling in the written portions, was signed by the defendant's agent and delivered to the plaintiff, who accepted it without objection, and forwarded it to the consignee of the package, who retained it until after the loss. The defendant, in due course of business, placed the package with other property in an iron safe, and put it in charge of a messenger upon the steamer "General Lyon," to be taken to New York, and while on the voyage to that port the steamer and its cargo, including the package in question, was destroyed by an accidental fire, which happened without any negligence on the part of the defendant or of the persons in charge of the vessel.

It is plain that upon proof of the receipt and of the loss by

fire under these circumstances, the defendant was, within the cases cited, *prima facie* exempt from responsibility.

The learned judge at the trial, in addition to the facts referred to, found that the plaintiff did not read the receipt when it was delivered to him, and that his attention was not called to its conditions or exceptions by the defendant's agent, or in any other manner, and that he did not become acquainted with its contents until the following fall or winter; "that he thought it to be an ordinary receipt for money, and not a contract; that when the receipt was handed to him he looked at it to see if the amount was correct; that when he took it he supposed that it was to show that the company received the money, and that the money was to be sent, and that he could present the receipt and get the money again; that he looked at the receipt to see where the money was to be carried, and to whom it was to be delivered; that he saw it was signed by the company's agent, and looked at the date also." The judge further found, that when the plaintiff looked at the signature of the agent he saw the printed matter above it, but that he did not assent to the limitations and conditions therein expressed. He also found that the plaintiff had sent other packages by the defendant before, and taken receipts similar in appearance to this, but had never read them. The judge held as a conclusion of law, that the plaintiff was entitled to recover, on the ground that the special clauses in the receipt were not brought to his knowledge at the time, and could not be deemed to have been agreed upon by the parties, and did not enter into or form a part of the contract between them.

It is to be observed that although the judge found in general terms that the plaintiff, when he took the paper, thought that it was a receipt for money and not a contract, he must have intended simply that the plaintiff did not suppose it to be a contract limiting or qualifying the defendant's common-law liability. The other findings are inconsistent with the idea that the plaintiff was ignorant of the fact that the paper was a contract between the parties. He must have known

that it bound the company to carry the money and deliver it pursuant to some agreement expressed in the receipt, for the judge finds that he supposed that " it was to show that the company received the money, and that the money was to be sent," and also " that he looked at the receipt to see where the money was to be carried, and to whom it was to be delivered."

The giving of a receipt or bill of lading by a carrier to a shipper, upon the delivery of goods for transportation, containing the terms and conditions upon which they are to be carried, is in the usual and customary course of business. (ALLEN, J., in *Long* v. *N. Y. C. R. R. Co.*, 50 N. Y., 77.)

It is not claimed that there was any fraud or imposition practiced by the defendant's agent. He did not represent that the paper was a bare acknowledgement of the receipt of the package, nor did he do any thing calculated to mislead the plaintiff, or put him off his guard. The plaintiff saw the signature of the agent and the printed matter preceding it, and the facts found leave no room to doubt that when he took the receipt he understood that it contained a contract on the part of the defendant, in respect to the carriage of the money. Can it be said that he is not bound by and did not assent to the limitations in the contract because he took the paper without reading it, and did not know its contents. The conditions are not unreasonable or unusual. They relieved the defendant from the stringent liability of an insurer, and on the other hand no price for the service having been agreed upon the plaintiff was only bound to pay for the carriage a compensation measured by the value of the service in view of the diminished risk assumed by the company. It is true that a contract implies an assent to its terms by the contracting parties, but a party may assent expressly or by implication. (BYLES, J., *Van Tall* v. *South Eastern Railway Co.*, 104 Eng. Com. Law, 75.) He cannot escape from the terms of a contract, in the absence of fraud or imposition, because he negligently omitted to read it, and when the other party has a right to infer his assent, he will be precluded

from denying it to the other's injury. The plaintiff is we think in that position. The contract was one which the parties might lawfully make. The defendant had a right to infer from the plaintiff's acceptance of the receipt without dissent, that he assented to its terms, and now after a loss has occurred it is too late to object that he is not bound. If he had objected at the time, the defendant would have been entitled to exact, as a condition of carrying the parcel, a compensation equivalent to the risk of insurers. The circumstances imposed upon the plaintiff the duty to read the receipt. The case of *Blossom* v. *Dodd* (43 N. Y., 264), is not in conflict with the views here expressed. The circumstances in that case repelled the idea of a contract. The plaintiff received the card or ticket under circumstances indicating to him that it was given merely for his convenience and protection to enable him to identify the baggage on delivery and that he might know in whose possession it was. The chief judge distinguishes the case then before the court from cases like this. He says : " As to bills of lading and other commercial instruments, it has been held that persons receiving them are presumed to know from their uniform character, and the nature of the business, that they contain the terms upon which the property is to be carried."

We are of opinion that the plaintiff under the circumstances of this case is conclusively presumed to have assented to the terms contained in the receipt taken when the money was deposited, and that the judgment below should be reversed. (See *Warhus* v. *The Bowery Savings Bank*, 21 N. Y., 543 ; *Pindar* v. *The Resolute Fire Ins. Co.*, 47 id., 114 ; *Breese* v. *U. S. Telegraph Co.*, 48 id., 132 ; *Belger* v. *Dinsmore*, 51 id., 166 ; *Grace* v. *The Adams Express Company*, 100 Mass., 505 ; *Rice* v. *Dwight Mfg. Co.*, 2 Cush., 87.)

All concur ; MILLER, J., not sitting.

Judgment reversed.