JONATHAN WOODRUFF, Respondent, *v.* ROBERT SHERRARD, Jr., as President of The New York Transfer Company, Appellant.

*Common carrier — limitation of liability — contract for — when given on demand for a receipt only — ineffectual.*

A daughter of the plaintiff, in company with another young girl, delivered a check for a trunk to the clerk of the transfer company at its office in New York, with directions to transport the same to her house at Brooklyn. She then turned away and was leaving the office, but upon the suggestion of her companion that she ought to have a receipt she returned to the desk and demanded a receipt of the clerk, who thereupon delivered to her a receipt by

which it was, among other things, stipulated that the company should not be liable to an amount exceeding $100 unless a special contract was made. She did not read the receipt or know its contents until after the loss of the trunk. In an action to recover the value of the trunk, *held*, that she never assented to the terms of the contract limiting the liability of the company, and that she was entitled to recover the full value of the trunk.

APPEAL from judgment in favor of the plaintiff entered on the report of a referee.

*Luke A. Lockwood*, for the appellant.

*Theron G. Strong*, for the respondent.

DANIELS, J.:

The recovery in this case was for the loss of a box and its contents, delived to the New York Transfer Company as a common carrier. They were then owned by the assignor of the plaintiff, who is his daughter. She was on her way from Rahway in New Jersey, to the city of Brooklyn, and left her check at the office of the transfer company, at the foot of Courtlandt street, in the city of New York, to have her baggage, consisting of a box and its contents, taken from the railway company to the place of her destination in Brooklyn. After delivering the check for them to the clerk in the transfer company's office, she started to leave it, when her companion suggested the propriety of having a receipt for it. She then turned to the clerk and requested him to give her a receipt for the check. He wrote out and delivered her a receipt and also a contract limiting, in terms, the liability of the company in case of loss to the sum of.$100, unless further compensation was paid for the additional risk. She received it, supposing it to be merely a receipt, and did not read it, or become aware of its contents until after the box, and its contents, had been lost by the company. When it was delivered to her, nothing was said by the clerk indicating that it was any thing more than the receipt applied for by her. Upon these facts the referee held that no contract between the parties had been established, by which the liability of the transfer company was limited to the sum of $100. He found that the box, and its contents, were of the value of $330, and for that directed judgment in the plaintiff's favor. The defendant insists that the recovery, on these facts, ought not to have exceeded the sum of

$100, and as it is now well settled that common carriers of property may, by special contract, limit their ordinary liability, the only point presented by the objection taken is, whether such a contract was shown to have been made in this case.

When the check was delivered to the clerk of the transfer company, the plaintiff's assignor could have refused to surrender it on any other terms than that the carrier should be charged with the full measure of its common-law liability concerning it. She had a right to decline to receive a contract of the limited nature of that contained in the instrument delivered to her, and that was the import of her request made to the clerk. It was for a receipt merely, which was probably required for the sole purpose of identifying the transaction in case the property was not delivered. And when the paper was given to her in response to her request, nothing was said or intimated by the clerk, that it was any thing different from the instrument asked for; she was not told that it was a contract as well as a receipt. And the act of passing it over to her without explanation, in compliance with her request that she should simply have a receipt, authorized the inference upon her part, that such was its nature and excused her for her omission to read or examine it. In complying with a request for a receipt, persons unacquainted with the modes of transacting business, as this young lady evidently was, would not expect to be handed a special agreement. If the clerk could not properly have given what he was asked for, he should have explained that he could not give a mere receipt without further compensation for the risk, in case the property exceeded in value the sum of $100. . Then the owner would have been in a position in which she could have provided for the complete safety or responsibility of and for her property. By not doing that but handing her a paper in response to her request for a receipt, and which she was justified by the circumstances in believing was nothing more than that, she was put off her guard and induced to leave her property under the control of the company, when she might not otherwise have done so.

To make a binding contract in such a case as this, requires at least the implied assent of the party receiving the instrument, and that was not made to appear. The fact was the other way, and the referee has so found it. A contract declaring the liability of the

company was not requested, but merely a receipt, and it was that, in the absence of every thing indicating it to be different, that she must have supposed was handed to her in answer to her request. The minds of the parties did not meet upon the subject of a contract, and the paper received was not accepted as such. The case, for this reason, seems to be within the principle declared by the learned chief judge of the Court of Appeals, in deciding the case of *Blossom* v. *Dodd.* It was there said that "the contract cannot be made by one party. If the traveler is informed of the charges graduated by value, he can have a voice in the bargain ; but in this case he had none. While the carrier should be protected in his legal right to limit his responsibility, the public should also be protected against imposition and fraud. The carrier must deal with the public on terms of equality ; and if he desires to limit his liability, he must secure the assent of those with whom he transacts business." (43 N. Y., 264, 270.) The case of *Kirkland* v. *Dinsmore* (62 N. Y., 171) contains nothing different from this proposition, and in no way conflicts with what was decided in the other case. It was there said by Andrews, J., in delivering the opinion of the court, that "it is not claimed that there was any fraud or imposition practiced by the defendant's agent. He did not represent that the paper was a bare acknowledgment of the receipt of the package, nor did he do any thing calculated to mislead the plaintiff or put him off his guard." (62 N. Y., 178.) In the present case the agent did both the acts not shown there, and which it is to be implied would, if they had appeared, have sustained the carrier's liability. For in apparent compliance with a simple request for a receipt, he handed her a contract, and did it in such a manner as to induce the belief that it was only the instrument she had asked for. The present case, in this respect, also differs materially from that of *Belger* v. *Dinsmore* (51 N. Y., 166), in which it was "not shown, nor is there any evidence whatever warranting the inference that the wife of the plaintiff, when she took the receipt, did not know, and was not fully informed of what provisions it contained, and fully understood them." (Id., 171.) And for the same reason it cannot be considered as controlled by *Huntington* v. *Dinsmore* (4 Hun, 66).

The existence of the instrument as a contract, was not shown by

the evidence. It cannot be inferred that it was intended to be assented to as being any thing more than a simple receipt, which was all that the agent was asked to deliver. No implication beyond that can be made from what was shown to have transpired between the parties preceding its delivery and acceptance. The referee was right in the construction he gave to the transaction, and the judgment should, therefore, be affirmed.

DAVIS, P. J., and BRADY, J., concurred.

Judgment affirmed.