(25 Misc. Rep. 412.)

NEUMAN v. NATIONAL SHOE & LEATHER EXCHANGE.

(City Court of New York, General Term. December 7, 1898.)

CONTRACT—PRINTED CONDITIONS ON RECEIPT—QUESTION FOR JURY.

    A collecting agency, which plaintiff had employed on several occasions, received a claim from him to collect; and it sent a receipt therefor, on the back of which was printed a clause stating that they did not guaranty clients against loss from the dishonesty of an attorney or the suspension of a bank. There was nothing on the face of the receipt to call attention to such rules. Plaintiff testified that the conditions indorsed on the receipt were never brought to his attention. There was no evidence that the delivery of the receipt was contemporaneous with his employment of the collecting agency. *Held*, that it was for the jury whether the receipt formed a part of the contract, so as to bind plaintiff by its provisions.

Appeal from trial term.

Action by Moritz Neuman against the National Shoe & Leather Exchange. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before McCARTHY, SCHUCHMAN, and OLCOTT, JJ.

Hastings & Gleason and Martin Saxe, for appellant.

Samuel Schlesinger and A. H. Parkhurst, for respondent.

OLCOTT, J. This is an appeal by the defendant from a judgment in favor of the plaintiff entered upon the verdict of a jury. The action was brought for money alleged to have been had and received for an account of the plaintiff. The defendant is a Mas-

sachusetts corporation engaged in the business of prosecuting and collecting debts and claims, having an office in the city of New York, which at the time of plaintiff's dealings with the defendant was under the management of Messrs. Eddy & Jones. Prior to the transaction described in the complaint, the plaintiff had on several occasions employed the defendant in the collection of various accounts. In the month of December, 1893, plaintiff placed with the defendant's New York managers, Messrs. Eddy & Jones, a claim for collection against one George P. Boynton, of Lynn, Mass., amounting to the sum of $248. Upon or after receiving this claim from the plaintiff, the defendant, through Messrs. Eddy & Jones, gave him a receipt, upon the back of which were printed certain statements, among which was the following:

"In sending drafts to banks, and claims to attorneys, the utmost care is taken to employ only those whose responsibility is beyond question. We do not, however, guaranty clients against loss arising from the dishonesty of an attorney or the suspension of a bank.

"[Signed]                                                    Eddy & Jones."

The plaintiff admitted that he received this receipt, either by personal delivery or by mail, at or shortly after the time when he put his claim into defendant's hands for collection, and that thereafter he was informed by Eddy & Jones, the managers of the defendant, that the proceeds of the claim were not paid to him for the reason that the attorney at Lynn employed to collect the claim had failed to remit, and that the treasurer of the defendant testified that this attorney had previously and frequently been employed by the defendant to make collections in that city; that he was personally known to said witness, enjoyed a good reputation, and prior to December, 1893, had been honest and prompt in making collections for the defendant. The treasurer then testified to proceedings taken by him to secure the payment of the money collected by the attorney, and his testimony shows due diligence and good faith, and exhaustive efforts on the part of the defendant to prevent loss to the plaintiff. Owing, however, to the default of the attorney, the entire claim was lost, the defendant never having received any of the money paid by the debtor.

There is nothing in the case upon which reversible error can be predicated, unless it be with relation to the question whether the defendant was properly held liable (as would, of course, ordinarily be the case) for the default of its agent, the defaulting attorney, or whether, on the other hand, the contract between the plaintiff and the defendant exempted the defendant from such liability. In other words, was there a meeting of the minds, actual or to be inferred, in assent as to this exemption which defendant now claims? It is conceded that nothing was said or orally agreed between the parties on this subject. The defendant relies solely upon the giving and taking of the receipt with the above-quoted clause indorsed thereon, and upon the fact that the plaintiff had had these receipts before. Plaintiff testified that he could not read English fluently, that he had no intimation that the paper given or mailed to him was other than a mere receipt, and that the defendant had served

him faithfully before; and he was permitted to say, without objec-, tion, that he held and believed it liable, else he would not have given it a claim for collection. We should also add that there was no positive evidence that the receipt was ever actually in the hands of the plaintiff, or that its delivery to him was contemporaneous with his employment of the defendant. On the face of the receipt, there was nothing to call the attention of the reader to the fact that various rules, of which the clause in question was one, were printed on the back. The case is therefore easy of distinguishment from Breese v. Telegraph Co., 48 N. Y. 139, Kiley v. Telegraph Co., 109 N. Y. 236, 16 N. E. 75, and the kindred cases which hold that a person who writes a dispatch upon a blank furnished by the defendant company thereby assents to the terms and conditions distinctly printed at the top thereof; these authorities going upon the principle that, no oral or other contract having been made, the use and acceptance of the blank constitute the contract between the parties, who are thereupon estopped from denying any of the terms thereof. The case at bar is also to be distinguished from Belger v. Dinsmore, 51 N. Y. 171, because there it was not shown, nor was there any evidence warranting the inference, that plaintiff did not know and was not fully informed of what provisions the receipt contained, while in the case at bar the jury, to whom the whole question was submitted, evidently believed the plaintiff's story, that the conditions indorsed on the receipt were never brought to his attention, and that the taking of the receipt was not a part of the contract, so as to charge the plaintiff with knowledge of its indorsements. The case of Kirkland v. Dinsmore, 62 N. Y. 171, was one in which it was proven that the delivery of the receipt was contemporaneous with the delivery of the property to the express company, and where these two deliveries were held to constitute the contract. In the case at bar we think that the question was properly submitted to the jury whether, under the facts proven, the plaintiff entered into any contract or agreement, expressed or implied, to absolve defendant from the consequences of loss,—whether, in other words, the receipt formed a part of the contract, or was merely an ex parte writing given after the contract was entered into. The jury resolved this question in favor of the plaintiff, and its verdict should not be disturbed.

The judgment and order appealed from must be affirmed, with costs. All concur.